**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**HENRY HINTON, JR. #200283**                                                **PLAINTIFF**

**VS.**                                   **CIVIL ACTION NO. 3:16-cv-616-WHB-JCG**

**DENNIS MARTIN and
PREMIER SUPPLY, LLC**                                                 **DEFENDANTS**

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

Defendants Dennis Martin and Premier Supply Link, LLC ("Premier Supply") submit

this Memorandum of Law in support of their Motion for Summary Judgment, as follows:

**I.        Introduction and Factual Background**

Pro Se Plaintiff Henry Hinton, Jr., a prison inmate, #200283, with the Mississippi

Department of Corrections, is presently incarcerated at the Mississippi State Penitentiary at

Parchman, Mississippi.  Defendant Premier Supply Link, LLC ("Premier Supply") (incorrectly

named and served as Premier Supply, LLC since no entity by that name exists) is in a contractual

agreement with the Mississippi Department of Corrections ("MDOC") to operate and manage the

prison canteen/commissary system. [Affidavit of Dennis Martin, attached to Motion as Exhibit

"A"].[1]  Prison inmates are able to purchase basic necessities and other goods from the prison

canteen using money held in their prison inmate account.

Plaintiff inmate Hinton filed this lawsuit *in forma pauperis* against defendants Dennis

Martin and Premier Supply alleging violations of 18 U.S.C. § 1962, the Racketeer Influenced

and Corrupt Organizations Act ("RICO") and alleges, among other things, that the defendants

---

[1] For purposes of this Motion, Defendants submit that only the signature page of the contract with MDOC is relevant
and prefer not to have their entire contract disclosed to a prison inmate or in the public record of these proceedings.
Defendants will provide the entire MDOC contract to the Court for an *in camera* review upon the Court's request for
same.

stole property from him, improperly charge him a sales tax for items sold to him through the prison commissary, that he is subjected to taxation without representation, extortion, constitutional violations, and he alleges without any factual basis that kickbacks are being paid to MDOC. Hinton seeks injunctive relief and monetary damages.

Defendant Dennis Martin is not a party to any contract with the Mississippi Department of Corrections and does not act in his individual capacity with respect to any management or operation of the prison canteen/commissary. At all relevant times, Dennis Martin acted in his capacity as an officer and employee of Premier Supply. [Affidavit of Dennis Martin, Exhibit "A"]. While the Plaintiff named Mr. Martin as an individual defendant in the Complaint, Plaintiff failed to make any allegation or pleading of the elements necessary to pierce Premier Supply's corporate veil of protection to hold Mr. Martin individually liable. [*See* Plaintiff's Complaint].

Prior to filing this lawsuit, inmate Hinton submitted two separate Requests for Administrative Remedy to the MDOC. The first request was submitted on May 23, 2016 [Request for Administrative Remedy, attached to Motion as Exhibit "B"], and the second request was submitted May 31, 2016 [Request for Administrative Remedy, attached to Motion as Exhibit "C"]. On June 7, 2016 the MDOC responded to inmate Hinton's first request by rejecting it on the basis that Hinton had filed "MULTIPLE COMPLAINTS," and it advised him that he "MUST FILE EACH COMPLAINT SEPARATELY." [MDOC Response, Exhibit "D"]. On June 23, 2016 the MDOC responded to inmate Hinton's second request by rejecting it on the basis that Hinton had filed "MULTIPLE COMPLAINTS," and it advised him that he "MUST FILE EACH COMPLAINT SEPARATELY." [MDOC Response, Exhibit "E"]. There is no evidence that inmate Hinton subsequently attempted to refile his multiple requests for

administrative remedy each as a separate complaint to the MDOC's Administrative Remedy Program prior to filing this lawsuit on August 5, 2016. Thus, inmate Hinton never properly filed his requests with the MDOC's Administrative Remedy Program.

Lastly and ironically, inmate Hinton alleges that he is being subjected to extortion, yet he actually wrote a letter to Defendant Dennis Martin, which was also mailed to undersigned counsel, in which Hinton made a threat of criminal prosecution against the Defendants if they would not agree to pay thousands of dollars to Hinton to settle this case covertly and in private. Thus, there is evidence in this case that inmate Hinton, using this litigation as his means, is attempting to extort money from the Defendants. [Hinton letter dated Sept. 5, 2016, attached to Motion as Exhibit "F"].

## II.    Law and Argument

A motion for summary judgment must be granted "if the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." F.R.C.P. 56(a). "The mere existence of a factual dispute does not by itself preclude the granting of summary judgment." *St. Amant v. Benoit,* 806 F.2d 1294, 1296-97 (5th Cir. 1987). "The requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986)(emphasis in original). "Only disputes over the facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. "Once the moving party has initially shown that there is an absence of evidence to support the non-moving party's cause, the non-movant must come forward with specific facts showing a genuine factual issue for trial." *TIG Ins. Co. v. Sedgwick James of Washington*, 276 F.3d 754, 759 (5th Cir. 2002) (quotations omitted). "Unsubstantiated assertions, improbable inferences,

3

and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003).

A.     **Plaintiff's claims must satisfy the requirements of the Prisoner Litigation Reform Act.**

Congress enacted the Prisoner Litigation Reform Act of 1995 ("PLRA") in an effort to "reduce the quantity and improve the quality of prisoner suits" and at its centerpiece is "an 'invigorated' exhaustion provision, §1997e(a)." *Woodford v. Ngo,* 548 U.S. 81, 84 (2006) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)).   The PLRA provides that a prison inmate must exhaust all administrative remedies prior to initiating a lawsuit where it mandates that "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], *or any other Federal law*, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."   42 U.S.C. § 1997e(a).  "Exhaustion is no longer left to the discretion of the district court, but is mandatory.  Prisoners must now exhaust all 'available' remedies, not just those that meet federal standards" *Id.*  Furthermore, a prisoner must exhaust administrative remedies "even where the relief sought – monetary damages – cannot be granted by the administrative process." *Id.* at 85.  The exhaustion requirement applies to all lawsuits which challenge prison conditions, and is not limited only to civil rights claims brought under § 1983. *Id.* at 85. Finally, the Fifth Circuit requires that any and all forms of relief sought by an inmate are subject to the administrative process in holding "that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative sources." *Wright v. Hollingsworth,* 260 F.3d 357, 358 (5th Cir. 2001).

Plaintiff inmate Hinton, a prisoner pursuing a civil action, seeks redress of his prison conditions, and alleges Defendants violated his constitutional rights and conspired with the MDOC in racketeering activity to deprive Plaintiff of his money and property. He seeks

4

injunctive relief as well as monetary damages. The PLRA is applicable to this case and requires

that all of the Plaintiff's allegations be screened for proper exhaustion of all administrative

remedies available to inmate Hinton prior to the filing of this lawsuit. Plaintiff inmate Hinton

failed to properly exhaust administrative remedies.  Accordingly, Plaintiff inmate Hinton's

Complaint should be dismissed.

   **B.    Plaintiff's Complaint should be dismissed for failure to properly exhaust
          administrative remedies.**

   The PLRA exhaustion requirement requires **proper** exhaustion.  The Fifth Circuit

requires that the only way to satisfy exhaustion is to "pursue[s] the grievance remedy to

conclusion." *Wright v. Hollingsworth,* 260 F.3d 357, 358 (5th Cir. 2001). "Proper exhaustion

demands compliance with an agency's deadlines and other critical procedural rules because no

adjudicative system can function effectively without imposing some orderly structure on the

course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006).  The Fifth Circuit

provides that Courts determine whether exhaustion has been met "[s]ince exhaustion is a

threshold issue that courts must address to determine whether litigation is being conducted in the

right forum at the right time . . . judges may resolve factual disputes concerning exhaustion

without the participation of a jury." *Dillon v. Rogers,* 596 F.3d 260, 272 (5th Cir. 2010).  An

inmate Plaintiff cannot satisfy the exhaustion requirement "by filing an untimely or otherwise

procedurally defective administrative grievance or appeal." Woodford, 548 U.S. at 83-84.   In

Mississippi the exhaustion "requirement does not fall by the wayside in the event that the prison

fails to respond to the prisoner's grievance at some preliminary step in the grievance process.

Instead, the prison's failure to timely respond simply entitles the prisoner to move on to the next

step in the process. Thus it is only if the prison fails to respond at the *last* step of the grievance

process that the prisoner becomes entitled to sue, because then there is no next step (save filing a

lawsuit) to which the prisoner can advance. This is true both under the terms of the program . . . and as a matter of the law of this circuit." *McFadden v. Fisher*, Civil Action No. 1:15cv374-RHW (S.D. Miss. November 9, 2106) (Casemaker, Federal Materials, District Court Opinions) (emphasis in original).

The 'applicable procedural rules' which Plaintiff must properly exhaust, "are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007). In the State of Mississippi, the Mississippi Department of Corrections ("MDOC") has its own statutorily authorized administrative review process wherein "[t]he Mississippi Code grants MDOC the authority to adopt an administrative review procedure at each of its correctional facilities." *Jones v. Denmark*, Civil Action No. 1:14-cv-258-LG-JCG (S.D. Miss. July 5, 2016) (citing Miss. Code Ann. § 47-5-801) (Casemaker, Federal Materials, District Court Opinions). "MDOC has implemented an ARP through which prisoners may seek formal review of a complaint or grievance relating to any aspect of their incarceration." *Id.* (citing MDOC Inmate Handbook, Ch. VIII, Administrative Remedy Program). Mississippi's administrative review process is a two-step process. *Id.* (citing *Threadgill v. Moore,* No. 3:10-cv-378-TSL-MTP, 2011 WL 4388832, *3 n.6 (S.D.Miss. July 25, 2011)). According to the MDOC Inmate Handbook, first a prisoner complaint is screened for technical compliance before a decision can be reached on the merits. A request may be rejected if an inmate has requested a remedy for more than one incident (a multiple complaint)." MDOC Inmate Handbook, Ch. VIII, § V. "If a request is rejected for technical reasons or matters of form, the inmate shall have *five days* from the date of rejection to file his or her corrected grievance." MDOC Inmate Handbook, Ch. VIII, § VI. (Emphasis added). Furthermore, the MDOC only allows a prison inmate to have one active complaint at a time in the administrative remedy process, and when an inmate files multiple

complaints, they are all backlogged except for the first one filed. *Jones v. Denmark* (citing *Wilson v. Epps*, 776 F.3d 296, 300 (5th Cir. 2015). The second step is a decision on the merits of the request, but an inmate must comply with the first step prior to proceeding to a decision on the merits. Hinton did not comply with either step prior to filing this lawsuit.

In this case, Plaintiff inmate Hinton filed two separate requests for administrative review with the MDOC which purportedly form the basis for this lawsuit. [Attached to Motion as Exhibits "B" Exhibit "C"]. His first Request for Administrative Remedy, filed May 23, 2016, alleges a multitude of grievances including taxation without representation, improper sales taxation at the city, county, and state levels, and seeks the refund of taxes for himself and for other unidentified prison inmates,[2] injunctive relief, and other things. The second Request for Administrative Remedy, filed May 31, 2016, alleges a multitude of grievances including property theft, the taking of alleged "free" services, Fifth Amendment violations, due process violations, and seeks monetary damages to be paid to himself and to other unidentified prison inmates, injunctive relief, and other things. There was no adjudication on the merits of either request for relief by the MDOC as both requests were rejected on technical grounds, because Plaintiff requested a remedy for more than one complaint in each request. Mr. Hinton was notified by the MDOC that he must file each complaint separately. Specifically, each request was returned as "REJECTED" on the basis that inmate Hinton had submitted "MULTIPLE COMPLAINTS", and Hinton was informed that he "MUST FILE EACH COMPLAINT SEPARATELY." [Exhibits "D" and "E"]. Hinton failed to file a corrected grievance in response to the MDOC's rejection of his multiple complaints. The applicable procedural rules required

---

[2]Although Plaintiff inmate Hinton appears to seek redress of grievances on behalf of a class of unidentified inmates as well as himself, he never sought nor obtained a class certification. Significantly, Plaintiff inmate Hinton's attempt to represent other inmates in Court may also constitute the unauthorized practice of law.

Plaintiff to file corrections within five (5) days from the date of the rejections, but he failed to do so. Because Plaintiff failed to file corrected grievances, he failed to properly exhaust the applicable administrative remedies prior to filing this lawsuit. The MDOC's process for administrative review was not followed by Mr. Hinton when he filed multiple complaints, and the MDOC never addressed the improperly filed complaints on the merits because it was not required to. It was incumbent on inmate Hinton to properly follow the administrative procedures for submission of separate complaints, but he failed to do so. Without exhausting all administrative remedies, Plaintiff unseasonably proceeded to file this federal lawsuit. Thus, Plaintiff Hinton failed to "afford corrections officials time and opportunity to address [his] complaints internally before . . . the initiation of a federal case." *Jones v. Denmark* (citing *Woodford* at 93). That was improper, and this lawsuit should be dismissed.

In the Complaint filed to initiate this lawsuit, Plaintiff for the very first time asserts federal racketeering and corruption charges against the defendants for the very first time pursuant to 18 U.S.C. § 1962, the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Inmate Hinton never made any RICO claims or alleged that defendants were guilty of racketeering or corruption during his incomplete attempt to request administrative review of his claims. This is yet another failure of inmate Hinton to exhaust all administrative remedies prior to filing suit. Thus, the RICO charges, like all other allegations in Plaintiff's Complaint, were improperly brought in this lawsuit.

Accordingly, Hinton's complaint against these defendants should be dismissed in its entirety. 28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2)(B) ("[T]he Court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant

8

who is immune from such relief."); *Woodford v. Ngo*, 548 U.S. 83-84 (2006) ("[J]udges may resolve factual disputes concerning exhaustion without the participation of a jury.").

### III.   Dennis Martin Is Not Liable For The Alleged Acts Of Premier Supply And Should Be Dismissed Individually.

Plaintiff Hinton improperly sued Defendant Dennis Martin individually since Martin cannot be held individually liable for the alleged acts of Premier Supply. The Plaintiff did not allege that the corporate veil should be pierced or plead any of the legal elements necessary to assert a cause of action to that effect. Plaintiff simply named Dennis Martin as a defendant. Accordingly, Martin should be dismissed from this action with prejudice.

### A.   Premier Supply is a legal entity, separate and distinct from Mr. Martin.

Mississippi treats a corporation as an entity separate from its individual shareholders. A corporation's assets and debts are separate and distinct from the debts of its individual shareholders. *American Telephone & Telegraph Co. v. Purcell Co.*, 606 So.2d 93, 97 (Miss. 1990). Merely operating, using and controlling a corporation does not make its owner personally liable for a corporation's acts. *Gray v. Edgewater Landing*, 541 So.2d 1044, 1047 (Miss. 1989).

Mississippi statutory law further provides that members, managers, and officers of limited liability companies are not personally obligated for the liabilities of the company:

"[T]he debts, obligations and liabilities of a limited liability company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the limited liability company, and no member, manager or officer of a limited liability company shall be obligated personally for any such debt, obligation or liability of the limited liability company solely by reason of being a member, acting as a manager or acting as an officer of the limited liability company." Miss. Code Ann. § 79-29-311(1) (1972, as amended).

The Mississippi Supreme Court held that "[T]he Mississippi Limited Liability Company Act is clear that an LLC member cannot be individually liable for an LLC's debt 'by reason of being a member[.]' *Restaurant of Hattiesburg, LLC v. Hotel & Restaurant Supply, Inc.*, 84 So.3d

32, 38 (¶21)  (2012); *See also* Miss. Code Ann. § 37-29-305(1) (Rev.2009); (*Grand Legacy, LLP v. Gant*, 66 So.3d 137, 146-47 (¶ ¶ 29-35) (Miss.2011) (noting the trial court properly held an LLC member was not personally liable solely based on his membership because there was no evidence the member participated in fraud).

As a matter of law, it takes extraordinary circumstances to pierce the corporate veil and hold an individual officer or employee liable, since "piercing the veil of an LLC should be reserved 'for factual circumstances which are clearly extraordinary— where to do otherwise would 'subvert the ends of justice.'"" *Restaurant of Hattiesburg, LLC v. Hotel & Restaurant Supply, Inc.*, 84 So.3d 32, 39 (¶22)  (2012) (citing *Gray*, 541 So.2d at 1046 (quoting *Johnson & Higgins of Miss., Inc. v. Comm'r of Ins.*, 321 So.2d 281, 284 (Miss.1975))).  "Mississippi has a strong public policy 'favor[ing] maintaining corporate entities and avoiding attempts to pierce the corporate veil[,]' and we find this policy extends to maintaining LLCs as well." *Id.*  (citing *Buchanan v. Ameristar Casino Vicksburg, Inc.*, 957 So.2d at 977 (¶ 27) (Miss. 2007) (citing *Gray*, 541 So.2d at 1047).  The Mississippi Supreme Court recognizes "that the corporate veil will not be pierced, in either contract or tort claims, except where there is some abuse of the corporate form itself." *Penn National Gaming v. Ratliff*, 954 So.2d 427, 432 (Miss. 2007) (claim dismissed where plaintiff failed to allege that defendant disregarded corporate formalities or used the corporate form to commit misfeasance).

In order to pierce Premier Supply's corporate veil, Hinton must prove each of the following three (3) elements, none of which were even alleged in Plaintiff's Complaint:

      (a) some frustration of contractual expectations;

      (b) flagrant disregard of LLC formalities by the LLC members; and

(c) fraud or misfeasance by the LLC member.

*Restaurant of Hattiesburg, LLC v. Hotel & Restaurant Supply, Inc.*, 84 So.3d 32, 39 (¶22) (2012).

Mr. Martin is not a party to the contract with MDOC.  Since Mr. Martin signed the MDOC contract solely in his capacity as a member of Premier Supply, no one can look to Mr. Martin for performance of the contract with MDOC to operate the prison commissary.  Further, the Plaintiff failed to even allege, much less make a specific showing, that the corporate veil should be pierced to hold Martin liable or that Mr. Martin flagrantly disregarded the corporate formalities or used the corporate form to commit any misfeasance.  There is no evidence whatsoever that Martin was intent on obtaining plaintiff's or any other inmate's money for his own personal use with no intention that Premier Supply perform on the contract with MDOC.  Further there is no allegation that Martin used Premier Supply as a shell corporation to shield himself from personal liability.  Instead, Premier Supply is indisputably in good standing and maintains its own records and checking accounts from which it accepts payments and make payments. [Affidavit of Dennis Martin, Exhibit "A"].  There is no basis whatsoever for Plaintiff to attempt to hold Dennis Martin liable for any alleged acts of Premier Supply.  Accordingly, Martin should be dismissed from this action with prejudice as a matter of law.

**IV.    Plaintiff Is Using This Lawsuit To Attempt To Extort Money From Defendants.**

Plaintiff Hinton wrote a letter dated September 5, 2016 to Dennis Martin at Premier Supply, a copy of which was also mailed to undersigned counsel post marked December 3, 2016 and delivered by the United States Postal Service, in which Hinton used this lawsuit to attempt to extort money from the Defendants. [September 5, 2016 letter from Henry Hinton, Jr., Exhibit "F"].  The letter is titled as an "OFFER" and is clearly an attempt to extort a monetary settlement

11

from the Defendants while threatening criminal prosecution against the Defendants for their

alleged acts relating to Premier Supply's operation of the prison canteen/commissary.

Specifically, Hinton demanded thousands of dollars from the Defendants to settle this lawsuit

under threat of criminal prosecution when he stated:

> I will also seek criminal charges against you by writing the U.S. Attorney
> and submitting several affidavits alleging theft.  To ensure he acts, I will
> also submit those same documents to several major news outlets. My
> experience as a journalist taught me this, if you want to get a government
> official "off" their duff, notify the media.

[Exhibit "F", at pg. 3, par. 3].  Hinton went on to demand that Defendants "deposit $75.00 into

my commissary account each Monday for 54 weeks" plus "a final payment of 2,000, paid into

the account" on week 55. [Exhibit "F", at pg. 4, par number 2. and 3.]

As a *pro se* litigant, Hinton is subject to the Federal Rules of Civil Procedure and the

Mississippi Rules of Professional Conduct, and, as such, Hinton's letter may be in violation of

Rule 11 F.R.P.C. and other rules of professional conduct which warrant the imposition of

sanctions against him, including the dismissal of this lawsuit.  *Ivy v. Merchant*, 666 So.2d

445,449-50 (Miss. 1995) (*pro se* litigants held to substantially the same standards of litigation

ethics as members of the bar).

Threatening criminal prosecution against an opposing litigant as leverage to settle a

lawsuit is a gross violation of our standards of professional conduct, the standard by which

Plaintiff inmate Hinton, as *pro se* litigant, is held substantially as a member of the bar would be.

*Ivy v. Merchant*, 666 So.2d 445, 449-50 (Miss. 1995).  Accordingly, Hinton should be sacntioned

with the dismissal of this lawsuit with prejudice.

**V.     Plaintiff's Lawsuit Is Frivolous, Malicious, and Does Not State a Claim. Dismissal of This Action Constitutes Six "Strikes" Against Him.**

Plaintiff inmate Hinton has developed an affinity for *in forma pauperis* filings in the Court system where he has filed at least seven (7) other lawsuits in addition to this one during the past year and a half. Five (5) of those suits were filed in the United States District for the Southern District of Mississippi, and appear to be currently pending as acknowledged by Plaintiff in his Complaint. [Plaintiff's Complaint, pg. 5].

28 U.S.C. 1915(g) provides for a three-strike rule for prisoner initiated abusive litigation as follows:

In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

In this case, Plaintiff has made no allegation that he is in imminent danger of serious physical harm. Plaintiff filed this Complaint without exhausting the administrative remedies available to him where he had two (2) separate Requests for Administrative Remedy on file with the MDOC which had been rejected procedurally and not properly exhausted. His lawsuit is in part based on those two (2) requests not properly exhausted. Each of those failures to exhaust should count as a separate "strike" against Plaintiff in accordance with 28 U.S.C. 1915(g). Plaintiff's lawsuit is also based on federal RICO claims that were never submitted to the MDOC in any request seeking an administrative remedy; thus, the RICO claims were not properly exhausted. The assertion of RICO claims not properly exhausted should count as a third "strike". Plaintiff also filed his Complaint against Mr. Martin individually without alleging or making any allegation or showing of the elements necessary to disregard the corporate veil to hold Mr. Martin individually liable. Likewise, no claims that the corporate veil of Premier Supply should

13

be pierced to hold Martin individually liable were ever submitted to the MDOC in the administrative review process. Thus, the claims against Martin individually were never properly exhausted and should count as a fourth "strike" against Hinton. Hinton's September 5, 2016 "OFFER" letter in which he attempts to extort money from the Defendants by threat of criminal prosecution is evidence of the malicious nature in which this lawsuit was brought. This arguably constitutes a fifth "strike" against Hinton for abusing the civil judicial system. Lastly, Plaintiff is also seeking a redress of grievances on behalf of other unidentified inmates without seeking or obtaining a class certification in violation of Rule 23 F.R.C.P. and in a manner that constitutes the unauthorized practice of law. Not only does this arguably constitute a sixth "strike," but the unauthorized practice of law. Plaintiff, therefore, filed his Complaint asserting multiple claims that were never properly exhausted against these Defendants frivolously, or maliciously, and all of which failed to state a claim upon which relief may be granted. As a matter of law the Plaintiff cannot obtain the relief he is seeking, and he is abusing the Court system by bringing frivolous baseless claims. In accordance with 28 U.S.C. § 1915(g), Defendants request that this Court dismiss each of the claims asserted in this lawsuit as being frivolous, malicious, and as failing to state a claim upon which relief may be granted. Defendants further request that the dismissal of this case count as at least six (6) "strikes" against Hinton under 28 U.S.C. 1915(g). Plaintiff's entitlement to proceed *in forma pauperis* in civil litigation should cease given that inmate Hinton has brought more than three (3) claims which are frivolous, malicious, and fail to state a claim, and Defendants request that Hinton be barred from bringing any more *in forma pauperis* civil actions in accordance with 28 U.S.C. § 1915(g). Finally, Plaintiff has admitted to filing seven (7) lawsuits, and in the light of the multitude of reasons why this current lawsuit is improper, undersigned expects that it is likely that Plaintiff's other suits pending in this District

14

Court may run afoul of 28 U.S.C. 1915(g).  Plaintiff must be stopped from abusing the Court System.

## VI.     Conclusion

For the foregoing reasons, Defendants Dennis Martin and Premier Supply Link, LLC respectfully request that this Court grant their Motion for Summary Judgment, dismissing all claims asserted against them by Plaintiff Henry Hinton, Inmate #200283, with prejudice and that Dennis Martin be dismissed individually with prejudice.  Defendants request that Plaintiff be sanctioned with dismissal of this case with prejudice for attempting to extort money from the Defendant by threat of criminal prosecution.  Defendants further request that this action be dismissed as frivolous, malicious, and for failing to state a claim in accordance with 28 U.S.C.  § 1915(g), and that inmate Hinton be barred from ever again proceeding *in forma pauperis* in civil litigation given that he has more than three (3) strikes against him for his abuse of the civil litigation process.

Respectfully submitted, this the 6th day of January, 2017.

Dennis Martin and Premier Supply Link, LLC

By their Attorneys,

Massey, Higginbotham, Vise & Phillips, P.A.

By: */s/ J. Wilbourn Vise*
    J. Wilbourn Vise (MSB No. 10135)

OF COUNSEL:

G. Michael Massey (MSB No. 9404)
Massey, Higginbotham, Vise & Phillips, P. A.
3003 Lakeland Cove, Suite E
Flowood, Mississippi 39232
Telephone:  (601) 420-2200
Facsimile:   (601) 420-2202

## CERTIFICATE OF SERVICE

I, the undersigned counsel for Premier Supply Link, LLC, do hereby certify that I mailed via United States mail, postage prepaid, a true and correct copy of the above and foregoing to the following counsel of record:

> Henry Hinton, Jr.
> 200283
> Unit 29-G-B- #28
> P.O. Box 1057
> Parchman, MS 38738
> *PRO SE*

This the 6th day of January, 2017.

/s/ J. Wilbourn Vise
J. Wilbourn Vise