# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**HENRY HINTON, JR.**                                                                 **PLAINTIFF**

v.                                          CIVIL ACTION NO. 3:16-CV-616-TSL-JCG

**DENNIS MARTIN, et al.**                                                          **DEFENDANTS**

## REPORT AND RECOMMENDATION

BEFORE THE COURT are the following motions: Defendants' Motion for Summary Judgment (ECF No. 22); Plaintiff's "Triple Motion" (ECF No. 55), which includes a Motion to Deny Defendants' Motion for Summary Judgment, a Motion to Strike Defendants' Motion to Strike, and a Motion for a Temporary Restraining Order; and Defendants' Motion to Strike Plaintiff's Letter dated March 15, 2019 (ECF No. 65). Having considered the submissions of the parties, the record, and relevant legal authority, the undersigned United States Magistrate Judge recommends that the Defendants' Motion for Summary Judgment (ECF No. 22) be granted; Plaintiff's Triple Motion (ECF No. 55) be denied in part and found as moot in part; and Defendants' Motion to Strike (ECF No. 65) be found as moot.

## I. BACKGROUND

Plaintiff Henry Hinton, who is proceeding *pro se* and *in forma pauperis*, filed a Complaint (ECF No. 1) against Defendants Dennis Martin and Premier Supply Link, LLC (incorrectly identified as "Premire Supply, LLC) on August 5, 2016 while housed at the Central Mississippi Correctional Facility in Pearl, Mississippi. He alleges that the Defendants violated the civil provisions of the Racketeer Influenced

and Corrupt Organizations Act, as they committed illegal taxation without representation and property theft.

On January 6, 2017, Defendants filed a Motion for Summary Judgment (ECF No. 22), asserting that Hinton's Complaint should be dismissed for failure to exhaust administrative remedies. They allege that although Hinton filed two Administrative Remedy Program (ARP) grievances, they were rejected by the Mississippi Department of Corrections (MDOC) at the first step because the grievances each contained multiple complaints. Despite being advised to do so, Hinton did not file any corrected grievances. In his Response to the Motion (ECF No. 26) and his Sur-Reply (ECF No. 30), he argued that his grievances were improperly rejected, as they contained only one complaint each and he could not determine how to properly exhaust. However, the Court granted the Defendants' Motion on July 6, 2017, finding that Hinton did not properly exhaust (ECF No. 39).

Hinton appealed (ECF No. 41), and the Fifth Circuit vacated and remanded (ECF No. 46). It concluded that Plaintiff's arguments "fairly raised the question whether the prison's administrative grievance procedure was 'available' to him." It vacated the decision granting the Defendants' Motion for Summary Judgment so that this Court may apply the standards set out in *Ross v. Blake*, 136 S. Ct. 1850 (2016).

Upon remand, Hinton immediately filed three Motions in this Court: a Motion for a Court's Ruling on Taxation without Representation (ECF No. 49) a Motion for the Start of Discovery (ECF No. 50), and a Motion for a Ruling that

Defendants Operate Under the Color of State Law (ECF No. 51). He appeared to assert that the issue of exhaustion had been resolved conclusively in his favor and sought a ruling on the merits. The Defendants filed a Motion to Strike Plaintiff's Pleadings and to Continue Stay of Proceedings Pending Decision on Remand (ECF No. 54). Because exhaustion is a threshold issue, the Court granted the Defendants' Motion and struck Hinton's three Motions, as they pertained to the merits of this case. Instead, the Court instructed the parties to submit supplemental briefing on the issue of exhaustion (ECF No. 56).

However, Hinton also filed a Triple Motion (ECF No. 55), asking the Court to deny the Defendants' Motion for Summary Judgment (ECF No. 22), strike the Defendants' Motion to Strike (ECF No. 54), and grant a temporary restraining order preventing Defendants from taking money from prisoners. Hinton later asked that the portion of the Motion seeking a denial of the Defendants' Motion for Summary Judgment be considered his supplemental brief on the issue of exhaustion (ECF No. 58). Essentially, Hinton argues the MDOC has created a system that erroneously rejects grievances and that confuses many prisoners. He argues that after his two grievances were rejected, he could not determine how they contained multiple complaints. He also argues that because the grievance system is controlled by the MDOC, "they could not have provided a remedy against Premier who is a private company."

Defendants filed their Supplemental Memorandum (ECF No. 61) on March 7, 2019. They argue that the administrative remedy program was available to Hinton,

as there is no evidence that the MDOC was unable or unwilling to provide a remedy, the rules are clear and straightforward, and there is no evidence the MDOC attempted to thwart Hinton's attempts to use the program. Therefore, because Hinton did not exhaust available administrative remedies, his suit is barred.

Hinton submitted a response in the form of a letter (ECF No. 64), in which he alleges that the Defendants fraudulently stated that there was no evidence showing that the MDOC was unable or unwilling to provide Hinton a remedy against a private company. In support, Hinton relies on the fact that he submitted what he considers streamlined grievances during the pendency of his appeal. Hinton asserts that these grievances were rejected as "beyond the power of ARP," and he argues that this proves that his administrative remedies were unavailable. However, at the Evidentiary Hearing held on March 27, 2019, Richard Pennington, the Director of the Administrative Remedy Program, testified that these grievances were rejected as such only because Hinton's claims were the subject of pending litigation.

The Defendants have moved to strike Hinton's letter, arguing that it is "untimely and contains false, scandalous and immaterial matter which is prejudicial against the Defendants" (ECF No. 65). They also argue that Hinton's streamlined property theft grievance was not rejected as beyond the power of the MDOC to grant but was actually rejected because it was filed on behalf of other inmates. Hinton has not filed a response to this Motion.

4

## II. DISCUSSION

### A. Legal Standard

Summary judgment is mandated "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c). A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When evaluating a motion for summary judgment, the Court must construe "all facts and inferences in the light most favorable to the non-moving party." *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012) (quoting *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010)).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)). If the movant carries this burden, the burden shifts to the non-moving party to show that summary judgment should not be granted. *Id.* at 324. "The non-movant must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial to avoid summary judgment." *Abarca v. Metro Transit Auth.*, 404 F.3d 938, 940 (5th

Cir. 2005) (citing *Celotex Corp.*, 477 U.S. at 324). In the absence of any proof, the Court will not assume that the Plaintiff "could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Because Hinton is a prisoner pursuing a civil action seeking redress, the Prison Litigation Reform Act (PLRA) applies and requires that this case be screened. The PLRA provides that "the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B). Accordingly, the statute "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).

The PLRA also requires prisoners to exhaust available administrative remedies before filing a lawsuit. 42 U.S.C. § 1997e(a). This exhaustion requirement protects administrative agency authority, promotes efficiency, and produces "a useful record for subsequent judicial consideration." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). A prisoner's failure to exhaust available administrative remedies undermines these purposes.

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . .

*Id.* at 95. Dismissal is mandatory where a prisoner fails to properly exhaust available administrative remedies before filing suit in federal court. *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012) (quoting *Woodford*, 548 U.S. at 85).

### B. Motion for Summary Judgment (ECF No. 22)

The Defendants moved for summary judgment on the basis that Hinton failed to exhaust his administrative remedies. The Fifth Circuit remanded this case for particular consideration of the impact of the Supreme Court's decision in *Ross*. Although exhaustion remains mandatory, "the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies." *Ross*, 136 S. Ct. at 1858 (alteration in original). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 1859 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). If administrative remedies were unavailable to Hinton in the present case, then he was not required to exhaust. However, after due consideration, the undersigned finds that none of the three circumstances outlined in *Ross* are present in this case. As such, Hinton failed to exhaust his available administrative remedies and the Defendants' Motion for Summary Judgment (ECF No. 22) should be granted.

In *Ross*, the Supreme Court noted three circumstances in which

administrative remedies are unavailable, but "these circumstances will not often arise." *Id.* Under the first exception, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* (citing *Booth*, 532 U.S. at 736). This might arise when the program "lacks authority to provide *any* relief." *Id.* (emphasis added). However, a remedy will be considered available when there is "the possibility of some relief." *Id.*

Here, Pennington testified that when an inmate files a grievance, it is first screened, as Hinton's grievances were. If the grievance complies with the procedural rules and is against a private contractor, MDOC will coordinate with the contractor to determine if the inmate is entitled to relief at the first step. *See Yankton v. Epps*, 652 Fed. App'x 242, 245 (5th Cir. 2016) (Under MDOC policy, grievances are first screened for procedural defects. If a grievance is rejected for failing to meet the MDOC's criteria, the inmate is notified; otherwise, they proceed to the first step. Only after receiving unsatisfactory responses at the first and second step may the inmate file suit.). Because Hinton did not file a procedurally proper grievance, his grievances never made it past the initial screening and were never presented to the Defendants for a potential remedy.

Hinton's argument that the later rejection of his "streamlined" grievances as beyond the power of the MDOC to grant proves that the Defendants were unable to provide a remedy is without merit, as Hinton's earlier grievances were the subject of pending litigation. The uncontroverted evidence shows that Hinton's initial

grievances were rejected on procedural grounds. As such, they were never presented to the Defendants for a potential remedy. Had Hinton filed a corrected, procedurally proper grievance before filing suit, the MDOC would have consulted the Defendants in determining a possible remedy. Even if Hinton would not have been satisfied with the potentially available administrative remedies, exhaustion is required "regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible." *Booth*, 532 U.S. at 739. The rejection of Hinton's grievances on procedural grounds alone does not provide evidence of unavailability under *Ross'* first exception. There is no evidence indicating that the grievance procedures operated as a "simple dead end" for Hinton.

Under the second exception outlined in *Ross*, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Ultimately, this is a question of whether "no ordinary prisoner can discern or navigate [the grievance system]." *Ross*, 136 S. Ct. at 1859. This appears to be Hinton's primary argument of unavailability, as he argues that the MDOC's system confuses prisoners and he personally could not determine how his grievances contained multiple complaints. However, "[w]hen an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion." *Id.*

The MDOC's grievance procedures define "a multiple complaint," which serves as a basis for rejecting a grievance prior to it entering the first step, as a complaint in which an inmate requests "a remedy for more than one incident." If an

9

inmate's complaint is rejected for technical reasons like this, the inmate has five days to re-file a corrected grievance (ECF No. 61-2). In Hinton's May 23, 2016 "Taxation without Representation" grievance, Hinton complains about the commissary charging a sales tax. However, he also complains that the City, County, and State do not represent him or the other inmates. He asked that the Defendants stop charging taxes to all inmates, provide a refund to all inmates for the past seven years, and provide notice to all inmates about the refund (ECF No. 69). As Pennington explained at the hearing, one of the reasons this grievance was rejected for multiple complaints was because there were multiple different entities Hinton complained of (i.e., Defendants, the City, the County, and the State). In his May 30, 2016 "Property Theft" grievance, Hinton alleges that Defendants stopped providing free money order services, monthly statements, and notices of deposits and began charging fees to make deposits or check an account without providing notice of the fees or seeking authorization from the inmates. He requested that the Defendants stop charging fees, provide a refund to all inmates for the past seven years, and provide notice to all inmates about the refund (ECF No. 70).

      Hinton contends that he could not find the "multiple complaints," but instead of attempting corrections or seeking guidance from the MDOC, he chose to proceed with the instant action, complaining that the rejection was improper and the system unusable. However, it is uncontroverted that the MDOC receives thousands of grievances each year. The sworn testimony at the March 27, 2019, hearing indicated that only a small percentage of grievances are rejected for procedural

reasons; most are accepted into the first step. Therefore, most reasonable inmates are able to follow the clear ARP procedures outlined in the MDOC's inmate handbook (ECF No. 61-2).

Further, Hinton testified that he had some college education, and he represented to the Defendants that he once worked as a paralegal (ECF No. 22-6). Hinton also indicated that he is familiar with the MDOC's grievance procedures and has filed other grievances while incarcerated. Additionally, he has filed at least seven other lawsuits in the Southern District of Mississippi since 2015, including two which are currently pending before the Fifth Circuit Court of Appeals.[1] Ultimately, this case presents a situation in which the grievance process is subject to "multiple reasonable interpretations," as the evidence shows that the majority of grievances are not rejected on procedural grounds. Hinton's statement that he filed streamlined grievances (even though they were rejected on other grounds) shows that the system is not "so opaque" that an ordinary prisoner cannot use it. In fact, the Northern District has found that ordinary prisoners can navigate and understand the MDOC's multiple complaint rule. *See Sumrall v. Davis*, Civil Action No. 4:16-cv-47-SA-JMV, 2018 WL 1546554, at *3 (N.D. Miss. Mar. 29, 2018). Hinton should have made his attempt at streamlining prior to instigating this lawsuit.

Under *Ross'* third exception, remedies are unavailable "when prison administrators thwart inmates from taking advantage of a grievance process

---

[1] *Hinton v. Shepard*, 5:15-cv-17-DCB-MTP; *Hinton v. Pike County Detention Center*, 5:15-cv-77-DCB-MTP; *Hinton v. Pike County*, 5:16-cv-14-KS-MTP; *Hinton v. Mississippi*, 5:16-cv-15-DCB-MTP; *Hinton v. Moore*, 5:16-cv-33-DCB-MTP; *Hinton v. Foss*, 3:16-cv-894-FKB; *Hinton v. Mason*, 3:19-cv-192-DPJ-FKB.

through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1860. This can include "staff mis[leading] the inmate as to the existence or rules of the grievance process," prison officials using "threats or other intimidation" to prevent the prisoner from entering the process, or misleading a prisoner "into thinking that . . . he had done all he needed to initiate the grievance process." *Id.* at 1860, n. 4 (internal citations omitted).

In this case, there is no evidence that Hinton was threatened or subjected to intimidation designed to prevent him from seeking administrative remedies, nor is there evidence that any officials misled him about the existence or substance of the rules. His argument could possibly be construed as an argument that he was misled into thinking that "he had done all he needed to initiate the grievance process," as he argues that he could not determine how his original grievances contained multiple complaints. However, as previously stated, his later streamlined grievances belie such an argument, and he was clearly told he needed to re-file his grievances (ECF Nos. 1-1 & 1-2). The MDOC's responses to his grievances demonstrate that Hinton was explicitly told he had not properly initiated the process. He merely ignored the instructions to re-file corrected grievances. The grievance procedure was available to Hinton, yet he chose to disregard the process. Allowing Hinton to maintain this lawsuit would thwart the goals of protecting administrative agency authority and promoting efficiency. Therefore, the Defendants' Motion for Summary Judgment (ECF No. 22) should be granted.

### C. Triple Motion (ECF No. 55) and Motion to Strike (ECF No. 65)

With respect to Hinton's Triple Motion (ECF No. 55), the portion seeking to strike the Defendants' earlier Motion to Strike (ECF No. 54) is moot, as the Court previously granted the Defendants' Motion to Strike (ECF No. 56). In light of the finding that the Defendants are entitled to summary judgment on the issue of exhaustion, the undersigned recommends that Hinton's request to deny the Defendants' Motion for Summary Judgment and his request for a temporary restraining order be denied. Finally, with respect to the Defendants' Motion to Strike Plaintiff's Letter (ECF No. 65), the undersigned recommends that it be denied as moot, as it is unnecessary for the resolution of this case.

## III. RECOMMENDATION

Based on the above analysis, the undersigned recommends that Defendants' Motion for Summary Judgment (ECF No. 22) be granted; Plaintiff's Triple Motion (ECF No. 55) be denied in part and found as moot in part; and Defendants' Motion to Strike (ECF No. 65) be found as moot.

## IV. NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Local Uniform Civil Rule 72(a)(3),

> After service of a copy of the magistrate judge's report and recommendations, each party has fourteen days to serve and file written objections to the report and recommendations. A party must file objections with the clerk of court and serve them upon the other parties and submit them to the assigned district judge. Within seven days of service of the objection, the opposing party or parties must either serve and file a response or notify the district judge that they do not intend to respond to the objection.

L.U. Civ. R. 72(a)(3); *see* 28 U.S.C. § 636(b)(1).

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. The District Judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations within fourteen days of being served a copy shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SIGNED**, this the 14th day of May, 2019.

*s/ John C. Gargiulo*
JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE